UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RACHEL BELL,

Plaintiff,

- against -

JPMORGAN CHASE BANK, N.A., and JONES LANG LASALLE AMERICAS, INC.,

Defendants.

**ORDER**

20 Civ. 2468 (PGG) (SLC)

PAUL G. GARDEPHE, U.S.D.J.:

Trial in this personal injury case is scheduled for April 17, 2023. (Jan. 19, 2023 Order (Dkt. No. 82)) Plaintiff Rachel Bell claims that she tripped and fell outside a branch of JP Morgan Chase, and suffered severe injuries, including a fractured hip. (Am. Cmplt. (Dkt. No. 13) ¶¶ 6-11) She was 18 years old at the time of her injury. (Bell Dep. (Dkt. No. 88-5) at 17 (stating that she was 20 years old at a deposition approximately two years after her injury))

In a March 10, 2023 motion in limine, Defendant JP Morgan Chase Bank, N.A. ("Chase") seeks to preclude Plaintiff from offering the following opinions of Dr. Nirmal Tejwani, Plaintiff's designated expert and treating physician: (1) "[i]t is likely that [Plaintiff Bell's] injury may result in arthritis in the hip over the long term"; and (2) she "may potentially need a hip replacement if symptoms like pain worsen." (Def. Br. (Dkt. No. 88-8) at 10-11; Tejwani Rpt. (Dkt. No. 88-7) at 3) Chase argues that, "[w]ithout qualifying this opinion to a reasonable degree of medical certainty and using the words 'may' and 'potentially,' this particular opinion is speculative and will only confuse the jury given [Tejwani's] expert status." (Id. at 11)

In opposing Chase's motion, Plaintiff states that – while she "has no intention of offering [Dr. Tejwani's] expert report as an exhibit in its own right" – Dr. Tejwani's opinions regarding the likelihood of arthritis and hip replacement are admissible:

> Medical experts testifying about future prognosis do not have a crystal ball to foresee exactly what will happen in the future. They can only testify about the sorts of outcomes that are possible, likely, probable, and foreseeable. For example, an amputee commonly develops infections at the stump and may require surgery to revise the stump. Yet a doctor testifying at trial can only say that these things can, often, or may occur, not that they certainly will occur, how often, and when. The same applies here. People who experience fractures may develop arthritis, and people with hip fractures may down the road require a hip replacement. Defendants are free to cross-examine Plaintiff's expert about the likelihood of those outcomes, etc. But that does not render the doctor's opinion impermissibly speculative.

(Pltf. Opp. (Dkt. No. 95) at 2-3)

Dr. Tejwani's curriculum vitae indicates that he is an orthopedic surgeon who received his medical degree in India in 1991, and that since that time he has practiced in India, the United Kingdom, and the United States. Since 1999, Dr. Tejwani has held various academic positions at New York University School of Medicine, and is the author of numerous publications in the area of orthopedics. (Tejwani CV (Dkt. No. 96-2))

At deposition, Dr. Tejwani testified as follows regarding Plaintiff's long-term prognosis:

> Q. Doctor, based upon [your assistant's] exam [of Ms. Bell] during the last visit, what is your expected prognosis for Ms. Bell?
>
> A. Again, as we discussed before, at this point looks like she is doing well. And long term, we are always concerned about people having hip arthritis with these factors so that's usually what we tell them, that's the prognosis.
>
> Q. Is there any indication at the last visit that she had begun to develop any arthritis in the hip?
>
> A. No.
>
> Q. And, Doctor, typically, if there is arthritis that develops at the fracture location,

That's what you are referring to, Doctor?

A. Say that again.

Q. The arthritis that's a possible risk that you are referring to, that's at the fracture location, is that correct?
. . .
A. The hip joint. The whole hip.

Q. Doctor, typically, if there is arthritis that develops, how long would that take to develop?

A. Unknown.

Q. Unknown. Okay. So it could be quickly, it could be years and years, is that accurate?

A. Correct.

(Tejwani Dep. (Dkt. No. 96-1) at 40-41)

In his report and in his deposition testimony, Dr. Tejwani did not (1) describe the methods he used to determine Plaintiff's prognosis, including the future risk of arthritis and the possibility of a hip replacement; or (2) explain why the facts and circumstances of Plaintiff's injury led him to believe that Plaintiff might later face arthritis and the possibility of a hip replacement.

## DISCUSSION

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

a. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

b. the testimony is based on sufficient facts or data;

c. the testimony is the product of reliable principles and methods; and

d. the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; see generally Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Accordingly, where a doctor will offer expert opinions about a plaintiff's condition that go beyond his or her knowledge and experience as the treating physician, the party that proffers such expert testimony must first establish that it is proper under this standard. See Puglisi v. Town of Hempstead Sanitary Dist. No. 2, No. 11-CV-0445 PKC, 2013 WL 4046263, at *6 (E.D.N.Y. Aug. 8, 2013) (holding that treating physician who was designated as an expert but had submitted neither "a full report . . . nor a summary of testimony . . . [could] not testify as to facts acquired or opinions formed outside of the treating physician role").

As discussed above, in discussing Plaintiff's long-term prognosis, Dr. Tejwani's report states only that "[i]t is likely that [Plaintiff Bell's] injury may result in arthritis in the hip over the long term," and that she "may potentially need a hip replacement if symptoms like pain worsen." (Tejwani Rpt. (Dkt. No. 887-7) at 3) The report contains no discussion of the "facts or data" underlying the prognosis, the "principles and methods" used to arrive at the prognosis, or how Dr. Tejwani "applied [any such] principles and methods to the facts of the case." Fed. R. Evid. 702. Dr. Tejwani's deposition testimony likewise does not shed light on the facts, data, principles, or methods underlying his determination of Plaintiff's prognosis. He testified only that "long term, we are always concerned about people having hip arthritis with these factors." He did not explain why he is "always concerned" about arthritis in cases such as this, or what leads him to believe that Plaintiff may later suffer from arthritis. (Tejwani Dep. (Dkt. No. 96-1) at 40-41) And at deposition, Dr. Tejwani did not the possibility of a hip replacement.

In sum, it is not clear what "facts or data" Dr. Tejwani considered in determining Plaintiff's prognosis. Nor has Plaintiff demonstrated that Tejwani's testimony about Plaintiff's

prognosis would be "the product of reliable principles and methods . . . [that have been] reliably applied . . . to the facts of the case." Fed. R. Evid. 702. Accordingly, despite Dr. Tejwani's considerable experience as an orthopedist, there is not an adequate basis in the record to demonstrate that his proffered testimony concerning Plaintiff's long-term prognosis is admissible under Fed. R. Evid. 702 and Daubert.

For these reasons, Defendant Chase's motion in limine to exclude Dr. Tejwani's proffered testimony about Plaintiff's long-term risk of arthritis and hip replacement (Dkt. No. 88-8) will be granted absent a supplementary submission from Plaintiff that meets the requirements of Rule 702 and Daubert. Plaintiff will file any supplementary submission by **April 10, 2023**.

Dated: New York, New York
April 3, 2023

SO ORDERED.

Paul G. Gardephe
United States District Judge